TIMOTHY D. BARROW, ESQ.
148 Main Street
Lebanon, New Jersey 08833
(908) 236-2229
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------------
BEECHER'S HANDMADE CHEESE, LLC,

                       Plaintiff,    :   CIVIL ACTION No.

     v.

NEW SOUND TRANSPORTATION LLC, and      **COMPLAINT**
RAY S. F., INC. d/b/a Freezpak Logistics,

                       Defendants.   :
-------------------------------------------------------------------

The Plaintiff herein, by their attorney, Timothy D. Barrow, complaining of the above Defendants, pleading upon information and belief as follows:

## THE  PARTIES

1. At and during all times hereinafter mentioned, Plaintiff BEECHERS HANDMADE CHEESE, LLC (hereinafter referred to as "BEECHER'S), is a limited liability company or other business entity duly organized and existing under and by virtue of the laws of the State of Washington and does business with its principal office address at 1725 Westlake Ave. N , Seattle, Washington 98109-3070.

2. At and during all times hereinafter mentioned, Defendant NEW SOUND TRANSPORTATION LLC (hereinafter referred to as "NST") is a limited liability company or other business entity organized and existing under and by virtue of the laws of the State of Washington with its principal place of business located at 7495 26th Street E, Fife, Washington. Said Defendant does business in New Jersey, is authorized to operate in the State of New Jersey by the Federal Motor Carrier Safety Administration (FMCSA) and has designated James Corsey, 600 Birchfield Road,

Ste. 601, Mount Laurel, New Jersey 08054 as its agent for service of process listed by the blanket service company Truck Process Agents of America, Inc pursuant to federal regulation.

3. At and during all times hereinafter mentioned, Defendant RAY S. F., INC. d/b/a Freezpak Logistics (hereinafter referred to as "FREEZPAK") is a corporation or other business entity organized and existing under and by virtue of the laws of the State of New Jersey or another State with its principal place of business located at 162 Railroad Ave, Paterson, New Jersey 07501. Said Defendant does business in New Jersey, is authorized to operate in the State of New Jersey by the FMCSA and has designated Jerry A. Casser, Esq., 75 Lane Road, Suite 402, Fairfield, NJ 07004 as its agent for service of process listed by the blanket service company Transportation Authority, LLC pursuant to federal regulation.

4. Plaintiff brings this action as shipper and owner of the subject cargo and on behalf of any insurers of the subject cargo in suit including any others whose interests may appear and is entitled to maintain this action.

5. Defendant NST is a FMCSA authorized operating common carrier, contract carrier and/or property carrier of cargo for hire and is otherwise a bailee of cargo entrusted in its care, custody and/or control.

6. Defendant FREEZPAK is a registered FMCSA transportation property broker pursuant to 49 U.S.C. § 13904 and who sells, arranges, provides for, and/or contracts with authorized motor carriers determined fit to perform the transportation of cargo in interstate commerce for the benefit of certain shippers and/or consignees.

## JURISDICTION AND VENUE

7. Plaintiff's causes of action and claims are within the original jurisdiction of this Honorable Court arising under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §

14706 and also pursuant to 28 U.S.C. § 1337(a). The Court may also exercise jurisdiction over the matters herein under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. Venue is proper and appropriate for this action pursuant to 49 U.S.C. § 14706 (d) against the contracted delivering carrier Defendant NST who operates within this District. Venue is also proper pursuant to 28 U.S.C. § 1391 (c) as the said Defendants are subject to personal jurisdiction in this District at the time of commencement of suit and under 28 U.S.C. §1391(b)(2) as a substantial part of the events and/or omissions giving rise to these claims occurred in this judicial district.

## **THE FACTS**

9. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 8 of the within Complaint in their entirety, as if set forth herein at length.

10. On or about May 8, 2020 Defendant NST, or those acting on its behalf, received 17 pallets consisting of 877 cases of chilled Flagship Cheese and Grading Blocks in good order, condition and quantity at Hall's Warehouse in South Plainfield, New Jersey on behalf of Plaintiff, pursuant to bill of lading and/or receipt, in a refrigerated trailer with temperatures contracted to be maintained between 34-39 degrees F for interstate transport for delivery to consignee Western Distribution Services in Burien (or Seattle), Washington for consideration of certain agreed freight paid or to be paid upon confirmation of delivery.

11. While in route during Defendant NST's transport to final destination, the subject truck and trailer rolled over resulting in an accident on May 14, 2020 outside of Billings, Montana. The subject cargo had to be trans-loaded to another trailer where it was subsequently transported to Defendant NST's Fife, Washington warehouse.

12. The subject cargo was surveyed by cargo interests on May 27, 2020 2with NST personnel present at NST's Fife, Washington warehouse. Some damages to the subject cargo were observed. Otherwise from an outward physical appearance, the cargo appeared to be in good order. However, no temperature records related to the subject cargos' interstate transportation from New Jersey through to the time of the rollover accident in Montana and then for the transportation to NST's Fife warehouse have ever been provided by NST although requested. Delivery to final destination was never effected by NST for this interstate transit of the subject cargo.

13. As a result of the rollover accident, the set temperature of 38 degrees for the subject cargo was obviously not maintained and has resulted in the compromise of the safety and retention in the quality of this food grade fresh cheese product.

14. Plaintiff can not use or sell the subject cheese for its original intended purpose  due to lack of proof that the  product was transported within the required  temperature specifications.

15.. The subject cargo was sold on the secondary market for salvage on or before October 24, 2020 demonstrating its damaged market value resulting in a loss of $243,443.46.

16. The Motor Cargo Liability Insurance Policy obtained by Defendant NST was reported to have a policy limit of $100,000.

17. The FREEZPAK Contract Shipping Instructions for the transportation by NST issued by Defendant FREEZPAK for this load recites that *the "contractor must maintain refer temperature and any abuse to product must be covered by the contractor cargo policy up to a minimum one hundred thousand."*

18.  The Brokerage Agreement between Defendants NST and FREEZPAK dated 7/11/2019 at ¶ 9 b. provides the Carrier (NST) was to procure and *maintain  "All Risk Broad Form Motor Truck Cargo Legal Liability insurance in an amount not less than $350,000 per occurrence. Such insurance policy shall provide coverage to the Broker, the Customer, the owner of the*

*cargo and/or consignee (as their interests may appear) for any loss, damage or delay claim to any property coming into the possession of the carrier under this Agreement."* Furthermore, *"[t]he coverage provided under the cargo policy shall have no exclusions or restrictions of any type that would preclude coverage relating to a cargo loss damage, or delay claim arising under this Agreement."*

19. There is no evidence that Defendant FREEZPAK enforced and/or monitored compliance by Defendant NST with ¶ 9 b. of their Brokerage Agreement which provision was entered into, *inter alia*, for the benefit of Plaintiff as the Customer/Owner of cargo to ensure a high policy limit to cover cargo losses up to $350,000 per occurrence.

20. Defendant NST did not procure the required cargo liability insurance set forth in the said Brokerage Agreement nor did Defendant FREEZPAK ensure that NST complied with this $350,000 required insurance for the subject shipment. Contrary to the Brokerage Agreement contract provisions, Defendant FREEZPAK only instructed Defendant NST to have minimum $100,000 cargo insurance contrary to its own Brokerage Agreement provisions with NST.

21. Plaintiff and those acting for or on behalf of Plaintiff have duly performed all duties and obligations on their part to be performed.

### PLAINTIFF'S CAUSE OF ACTION AGAINST DEFENDANT NST

### COUNT ONE – CARRIER LIABILITY UNDER THE CARMACK AMENDMENT FOR CARGO LOSS AND DAMAGE

22. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 21 of the within Complaint in their entirety, as if set forth herein at length.

23. Defendant NST's failure to transport, secure, store, maintain proper reefer temperatures and deliver the subject cargo of fresh chilled cheese from time of receipt from Hall's Warehouse

in South Plainfield, New Jersey to Western Distribution Services at Burien, Washington or other designated location of Plaintiff's designated receiver in the same good order, quantity and condition as received were caused by Defendant NST and/or its agents and/or servants' failures to properly perform and/or negligently perform the interstate contract of carriage of the subject cargo that was owed to the shipper, consignee and/or owner of said cargo as an interstate motor carrier of same that resulted from their conduct or omissions to properly receive, store, secure, carry, transport, store, deliver and/or care for the subject cargo for which NST is liable under the Carmack Amendment as motor carrier or otherwise as provided by statute.

24. By reason of the premises, Plaintiff has sustained actual damages in the amount of $243,443.46 which is the difference for the selling market price and damaged market price value of the cargo which has been demanded but not paid.

### PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANT FREEZPAK

### COUNT I – BREACH OF CONTRACT

25. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 24 of the within Complaint in their entirety as if set forth herein at length.

26. Defendant FREEZPAK's failure to have properly arranged, provided and contracted for the transportation of the subject high-value cargos for delivery to destination in the same good order and condition as received by confirming compliance with the expressed obligations of the motor carrier in the Brokerage Agreement were breaches of contract to Plaintiff as well as express and/or intended third party beneficiaries of the contract between Defendants.

27. Defendant FREEZPAK's failure to have properly arranged, provided and contracted for the transportation of the subject high-value cargos with the required motor truck cargo liability

6

insurance limit of $350,000 to cover any total loss as set forth in the Brokerage Agreement with NST were breaches of contract to Plaintiff/owner of said cargos.

28. By reason of the premises, Plaintiff has sustained damages, no part of which has been paid although duly demanded, in the amount of $243,443.46.

### COUNT II – NEGLIGENCE

29. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 24 of the within Complaint in their entirety as if set forth herein at length.

30. As a registered FMCSA property transportation broker, Defendant FREEZPAK owed a duty of care to the owner and/or shipper to properly arrange, provide and contract for the interstate transportation of the subject high-value cargos for delivery to destination in the same good order and condition as received.

31. The failures to properly arrange, provide and contract for the interstate transportation of the subject high-value cargos with the required motor truck cargo liability insurance as set forth in their Brokerage Agreement with NST through to delivery destination in the same good order and condition are breaches of Defendant FREEZPAK's duties and obligations of care which was the proximate cause of the loss and damage sustained by Plaintiff.

32. By reason of the premises, Plaintiff has sustained damages, no part of which has been paid although duly demanded, in the amount of $243,443.46.

### COUNT III – NEGLIGENT HIRING OF MOTOR CARRIER

33. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 31 of the within Complaint in their entirety as if set forth herein at length.

34. Defendant FREEZPAK arranged for the transportation of the subject shipment as a FMCSA property broker by hiring Defendant motor carrier NST on or before the date of shipment of the subject cargo.

35. Defendant NST did not have the required cargo insurance with a coverage loss limit of $350,000 as it was obligated to procure at the time of the shipment in May 2020 or thereafter.

36. Defendant FREEZPAK failed to obtain the necessary information and confirm that Defendant NST had proper cargo insurance that would confirm coverage for the transportation of the subject shipments in accord with their Brokerage Agreement.

37. Defendant FREEZPAK failed to adhere to industry guidelines and its own brokerage contract in the hiring, selection, and retention of Defendant motor carrier NST for the purpose of effecting safe, reliable and professional transport services in regard to the subject shipment.

38. As transportation property broker, Defendant FREEZPAK owed a duty of care and due diligence to the owner, shipper and/or consignee when hiring, selecting and/or retaining Defendant NST for the interstate motor transport of the subject shipment.

39. The failure to exercise care and due diligence by Defendant FREEZPAK in the hiring, selection and/or retention of Defendant NST to perform the interstate transportation services, including but not limited to FREEZPAK's failure to adhere to industry guidelines and its own Brokerage Contract in hiring, selection and retaining a fit motor carrier, as well as also ensuring the required cargo liability insurance was in place before entering into its agreement with Defendant NST to safely transport and insure the subject cargo is a breach of Defendant FREEZPAK's duties and obligations of care as transportation property broker and was the proximate cause of the loss and damage sustained by Plaintiff and/or its insured.

40. By reason of the premises, Plaintiff has sustained damages, no part of which has been paid although duly demanded, in the amount of $243,443.46.

### COUNT IV – NEGLIGENT ENTRUSTMENT OF PROPERTY

41. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 40 of the within Complaint in their entirety as if set forth herein at length.

42. The failure to exercise care and due diligence by Defendant FREEZPAK in entrusting Plaintiff insured's subject shipment to Defendant NST who was an unfit motor carrier to perform the interstate transportation services without any ascertainment of an insurance policy number as well as the failure to obtain proper and required cargo liability insurance and coverage limit of $350,000, *inter alia*, are breaches of Defendant FREEZPAK's duties and obligations of care as a transportation property broker and was the proximate cause of the loss and damage sustained by Plaintiff and/or its insured.

43. By reason of the premises, Plaintiff has sustained damages, no part of which has been paid although duly demanded, in the amount of $243,443.46.

      WHEREFORE, Plaintiff demands:

1. That process in due form of law according to the practice of this Court may issue against the named Defendants;

2. That a decree and judgment may be entered in favor of Plaintiff against the Defendants, individually, jointly and severally, for the amount of Plaintiff's actual and full damages in the amount of $243,443.46 or the total damages to be established

at trial, together with pre-judgment interest from May 14, 2020 as well as post-judgment interest and costs; and

3. That this Court will grant the Plaintiff such other and further relief as may be just and proper.

          ___s/ Timothy D. Barrow_____
          TIMOTHY D. BARROW
          Attorney for Plaintiff

Dated: June 21, 2021
      Lebanon, New Jersey